UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 2:19-CV-14154-ROSENBERG/MAYNARD

STEVEN FISHER,

    Plaintiff,

v.

HARLEY-DAVIDSON MOTOR GROUP, LLC,

    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION
TO DISMISS THE FIRST AMENDED COMPLAINT**

THIS CAUSE is before the Court on Defendant Harley-Davidson Motor Group, LLC's Motion to Dismiss the First Amended Complaint. The Court has reviewed the record, including the First Amended Complaint (DE 24), Defendant's Motion to Dismiss (DE 28), Plaintiff's Response (DE 31), and Defendant's Reply (DE 33), and is otherwise fully advised in the premises. For the reasons discussed below, the motion is GRANTED.

        **I.**        **INTRODUCTION**

The First Amended Complaint alleges that Harley-Davidson Motor Group, LLC ("Harley-Davidson") manufactured certain motorcycles equipped with a defective anti-lock braking system ("ABS"). In 2007, Harley-Davidson began offering ABS on 2008–2010 Touring or CVO Touring model motorcycles ("Class Motorcycles"), and Harley-Davidson charged a premium for this feature. DE 24 ¶¶ 24–26. Harley-Davidson touted ABS through press releases, product catalogs, a promotional video, and brochures. *Id.* at ¶¶ 27–30. ABS is designed to help riders maintain control by preventing wheels from locking and skidding. *Id.* at ¶¶ 29, 32. Without ABS, riders "pump" the brakes to prevent a wheel lockup and loss of control. *Id.* at ¶

33. ABS allows riders to maintain a constant braking pressure while the system automatically pumps the brakes. *Id.* at ¶ 32.

As early as 2008, Harley-Davidson learned that ABS was prone to malfunction due to wire breakage in the ABS wiring harness. *Id.* at ¶ 35. Harley-Davidson's internal tests revealed that ordinary wheel turning could cause wire breakage after relatively little mileage and without warning to the rider. *Id.* at ¶ 37. This is potentially dangerous because different braking techniques are recommended depending on whether the motorcycle has functioning ABS. *Id.* at ¶¶ 36–40. Further, Harley-Davidson received complaints of ABS failure that were not disclosed to the public. *Id.* at ¶ 42. In response to these problems, Harley-Davidson began working on an improved ABS system. *Id.* at ¶ 43. In the meantime, Harley-Davidson continued to sell 2008–2010 models equipped with the same ABS. *Id.* at ¶ 45. It made substantially the same representations about the ABS system in its promotional and safety materials, and it did not issue a notice to riders about the alleged defect. *Id.* at ¶ 45–46. Beginning in 2011, Harley-Davidson included a retrofitted ABS wiring harness designed to alleviate the alleged defect. *Id.* at ¶ 50. In 2018, the Class Motorcycles were subject to a nationwide recall due to an unrelated issue with the ABS hydraulic control unit, and the wire-breakage defect was not included in the recall. *Id.* at ¶ 54.

In 2011, Plaintiff Steven Fisher purchased a new 2010 Harley-Davidson Electra Glide Limited motorcycle from a Florida dealer. *Id.* at ¶ 60. In December 2015, Plaintiff's ABS allegedly malfunctioned. *Id.* at ¶ 64. While travelling at 40 miles per hour, he braked using the technique indicated for ABS-equipped motorcycles, and his front brake locked, nearly causing him to lose control of the motorcycle. *Id.* He paid to repair the motorcycle and to replace the

ABS module. *Id.* at ¶ 65. He also complained to Harley-Davidson's customer service, who informed him that his brake locking was an isolated incident. *Id.* at ¶ 66.

Plaintiff filed the original Complaint on May 6, 2019. DE 1. Defendant filed a Motion to Dismiss on June 12, 2019. DE 17. Plaintiff filed the First Amended Complaint on June 26, 2019, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). DE 24. Plaintiff sues on behalf of himself and a putative class of Florida purchasers of model year 2008–2010 Harley-Davidson Touring or CVO Touring model motorcycles, claiming a violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA"), breach of express and implied warranties, and unjust enrichment. He seeks further relief under the Magnuson-Moss Warranty Act, 15 U.S.C. 2301 *et seq.*, and a declaratory judgment under 28 U.S.C. § 2201. Finally, Plaintiff alleges that the cause of action did not accrue until 2019 under the doctrine of delayed discovery, and that Harley-Davidson fraudulently concealed the defect, thus tolling any statutes of limitations.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556). At the motion to dismiss stage, the "plaintiff's factual allegations are accepted as true. . . . However,

conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).  Finally, a court may dismiss a claim under Rule 12(b)(6) if it is "'apparent from the face of the complaint' that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (quoting *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003)).

### III. DISCUSSION

#### a. FDUTPA

Plaintiff alleges that Harley-Davidson's continued sales of the Class Motorcycles and its nondisclosure of problems with the ABS module constitute "unfair, unconscionable, and deceptive acts or practices" in violation of FDUTPA.  Fla. Stat. § 501.204.  The statute of limitations for claims under FDUTPA is four years.  Fla. Stat. § 95.11(3)(f); *Martin v. World Wide Child Care Corp*, Case No. 17-cv-80188, 2017 WL 9618895, at *4 (S.D. Fla. Dec. 1, 2017).  When a FDUTPA claim is based on a product purchase, the statute begins to run from the date of sale.  *Matthews v. Am. Honda Motor Co., Inc.*, Case No. 12-cv-60630, 2012 WL 2520675, at *4 (S.D. Fla. June 6, 2012).

Plaintiff purchased his motorcycle in 2011, and therefore the filing of the case in 2019 was well beyond the four-year statute of limitations.  The doctrine of delayed discovery, under which the statute of limitations begins to run when "the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence," does not apply to claims under FDUTPA.  *Martin*, 2017 WL 9618895, at *4 (quoting *Speier-Roche v. Volkswagen Grp. of Am. Inc.*, Case No. 14-cv-20107, 2014 WL 1745050, at *6 (S.D. Fla. Apr.

4

30, 2014). Accordingly, the FDUTPA claim survives only if Plaintiff adequately alleges fraudulent concealment such that the statute of limitations is equitably tolled.

### *Fraudulent Concealment*

Under Florida law, fraudulent concealment may toll the statute of limitations when a defendant "engage[s] in the willful concealment of the cause of action using fraudulent means to achieve that concealment." *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1282 n.1 (11th Cir. 2003) (citing *Berisford v. Jack Eckerd Corp.*, 667 So. 2d 809, 811 (Fla. Dist. Ct. App. 1995)). Courts applying Florida law have held that "[t]he 'fraudulent means' alleged must go beyond mere non-disclosure, and must constitute active and willful concealment." *Licul v. Volkswagen Grp. of Am.*, Case No. 13-cv-61686, 2013 WL 6328734, at *6 (S.D. Fla. Dec. 5, 2013). To qualify as fraudulent concealment, a defendant's conduct must occur after the plaintiff's cause of action has already accrued. *In re Engle Cases*, Case No. 09-cv-10000, 2012 WL 12904243, at *5 (requiring "an affirmative act that served to dupe, trick or hoodwink the plaintiff such that he or she was falsely enticed into inaction after her cause of action accrued"). Finally, fraudulent concealment must be pled with particularity under Federal Rule of Civil Procedure 9(b). *Speier-Roche*, 2014 WL 1745050, at *7 ("Under Rule 9(b), the circumstances of the fraud must be alleged with specificity, i.e. the 'who, what, when, where, and how' of the alleged fraud.") (citation omitted).

Plaintiff alleges that Harley-Davidson made misrepresentations or omissions constituting fraudulent concealment in five different mediums: (1) user manuals, (2) advertisements, (3) customer service interactions, (4) communications to its dealer network and regulators, and (5) a confidential settlement in related litigation. First, user manuals distributed at the time of sale stated that ABS offered "consistent braking and stopping power under all operating conditions"

5

and that ABS would "help the rider maintain control during emergency stopping situations, especially those that happen in less-than-ideal conditions." DE 24 ¶ 79.  Plaintiff asserts that by "affirmatively and repeatedly" describing ABS as effective, Harley-Davidson actively concealed the alleged defect from consumers.  But these are simply descriptions of the ABS system—these statements make no representations about the lifetime or reliability of the ABS module.  The real thrust of Plaintiff's allegations is that the manuals failed to disclose the defect.  Accepting as true that Harley-Davidson knew of the defect when these statements were made, these statements would amount to mere nondisclosure.  *Licul*, 2013 WL 6328734, at *6.  Further, Plaintiff does not adequately allege that he saw or relied on these representations at all, much less after he purchased the motorcycle as required under Florida law.  *In re Engle Cases*, 2012 WL 12904243, at *5.

Second, Plaintiff's allegations regarding Harley-Davidson's advertisements and product descriptions—that the ABS was "designed and carefully tested to work superbly" and would "reduce risk in real-world riding conditions"—similarly fall short.  DE 24 ¶ 80.  Plaintiff has not alleged that either of these statements were false.  Rather, Plaintiff asserts that these statements necessarily warrant that the ABS module was free of latent defects.  This argument elides the distinction between a misrepresentation and nondisclosure, and like the statements in the user manuals, Plaintiff did not allege that he relied on these statements after his cause of action accrued.

Third, the allegation that Harley-Davidson instructed its customer service representatives to deny any defects in the ABS wiring harness might, under different circumstances, support a claim of fraudulent concealment.  However, the only incident described in the complaint is a

6

phone call Plaintiff made to Harley-Davidson sometime in December 2015 or later, when he was told that the braking malfunction was "an isolated incident."  *Id.* at ¶ 81.  In response to Harley-Davidson's argument that the statute of limitations had already run by this point, Plaintiff describes the incident as evidence of a "course of conduct" by Harley-Davidson.  DE 31 at 6.  But Plaintiff cannot rely on statements that may or may not have been made to unnamed nonparties to toll his own statute of limitations.

Fourth, the allegation that Harley-Davidson "actively concealed" information about the defect from its dealer network and regulators is one of mere nondisclosure—Harley-Davidson told its dealers about other known issues but did not mention the ABS wiring issue.  Plaintiff points to a filing by Harley-Davidson with the National Highway Traffic Safety Administration, stating that Harley-Davidson was "conducting a study to gather ABS module reliability data," as an affirmative representation that "there was no persistent failure of its ABS wiring harness."  DE 24 ¶ 82.  The language of the filing does not bear such an inference.

Fifth, Plaintiff cites a confidential settlement in related litigation as a means by which Harley-Davidson fraudulently concealed the alleged defect from consumers.  But Plaintiff does not explain how a confidential settlement—the terms of which are nonpublic—induced him to delay filing this suit.

Plaintiff relies on two cases, *In re Takata Airbag Prod. Liab. Litig*, 193 F. Supp. 3d 1324 (S.D. Fla. 2016), and *Amin v. Mercedes-Benz USA, LLC*, 349 F. Supp. 3d 1338 (N.D. Ga. 2018), to argue that he has adequately pled fraudulent concealment.  Both cases are inapposite.  *In re Takata* involves claims that certain Mazda vehicles were equipped with defective airbags.  There, the Court found that fraudulent concealment was adequately pled under Alabama law

because an employee at a Mazda dealership told one of the plaintiffs that his airbag light illuminating was "nothing to worry about." *In re Takata*, 193 F. Supp. 3d at 1344. This is the type of affirmative conduct required for fraudulent concealment under Florida law. The only analogous conduct here is the conversation between Plaintiff and Harley-Davidson customer service, which occurred after the statute of limitations had run. *Amin* involved claims under Georgia law that Mercedes fraudulently concealed a defect in vehicular HVAC systems. There, the court did not equitably toll any statute of limitations because there were no time-barred claims under Georgia's statutory scheme. Rather, fraudulent concealment was pled as a *substantive cause of action*, which requires different elements than its equitable-tolling counterpart. *See Amin*, 301 F. Supp. 3d at 1296 (listing five elements for the "tort of fraud"). Because Plaintiff has not adequately pled fraudulent concealment under Rule 9(b), the FDUTPA claim is dismissed. Accordingly, the Court need not address the propriety of Plaintiff's requested relief under FDUTPA.

      **b.    Breach of Express Warranty**

Plaintiff next alleges that Harley-Davidson breached an express warranty by selling the Class Motorcycles. Under the Florida Uniform Commercial Code, a claim for breach of express warranty requires: "(1) the sale of goods; (2) the express warranty; (3) breach of the warranty; (4) notice to seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach of the express warranty." *Jovine v. Abbott Laboratories, Inc.*, 795 F. Supp. 2d 1331, 1340 (S.D. Fla. 2011) (citing *Dunham-Bush, Inc. v. Thermo-Air Serv., Inc.*, 351 So. 2d 351, 353 (Fla. Dist. Ct. App. 1977)). Because express warranties are a form of contract, claims for breach of an express written warranty are subject to a 5-year statute of limitations. Fla. Stat. §

95.11(2)(b). As with FDUTPA, the delayed-discovery doctrine does not apply to warranty claims. *Potiker v. Gasiunasen Gallery*, No. 09-cv-82356, 2010 WL 2949943, at *3 (S.D. Fla. July 26, 2010) (citing *Davis v. Monahan*, 832 So. 2d 708, 709 (Fla. 2002)).

Plaintiff alleges that he purchased his motorcycle in 2011, that it was covered by an express written warranty, that Harley-Davidson had notice of the breach either through its prior knowledge of the alleged defect or as a result of Plaintiff's phone call to customer service, and that he suffered damages as a result. Plaintiff alleges that the warranty document guaranteed "the motorcycle to be free of defects in materials and workmanship at the time of delivery," DE 24 ¶ 105, and that "Harley-Davidson breached its warranties by offering for sale and selling defective motorcycles that were by design and construction defective and unsafe, thereby subjecting the owners of the Class Motorcycles to damages and risks of loss and injury." *Id.* at ¶ 106. In response, Harley-Davidson refers to the warranty document it attached as an exhibit to its first Motion to Dismiss. DE 17-1. When a motion to dismiss attaches a document, the court generally must exclude the document or treat the motion as a motion for summary judgment. Fed. R. Civ. P. 12(d). However, the document may be considered if it is "(1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d. 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).

The warranty document is clearly "central" to a claim based on breach of an express written warranty. Plaintiff nonetheless objects to Harley-Davidson's reference to the warranty document. DE 31, at 10. The Court considers the document for purposes of the instant motion because Plaintiff does not contest the *authenticity* of the document—there is no allegation that

9

the document was fabricated or that its terms are not facially applicable to Plaintiff's motorcycle. Rather, Plaintiff argues that the document should not be considered because it does not specifically reference Plaintiff's motorcycle or the date Plaintiff received the warranty. But if the terms of the document differ from the warranty under which Plaintiff is suing, Plaintiff is free to include the correct warranty language in an amended complaint. If Plaintiff disputes that he was timely provided the warranty when he purchased his motorcycle, he may allege the same. Nothing in this Order precludes Plaintiff from challenging the authenticity of the warranty document in the future, should Plaintiff have a basis to do so.

The document provides, in relevant part:

> Harley-Davidson warrants for any new 2010 Harley-Davidson motorcycle/sidecar that an authorized Harley-Davidson dealer will repair or replace without charge any parts found under normal use to be defective in factory materials or workmanship. Such repair and replacement will be Harley-Davidson's sole obligation and the customer's sole remedy under this warranty. . . .
>
> The duration of this limited warranty is twenty four months, starting from the earlier of (a) the date of initial retail purchase and delivery from an authorized Harley-Davidson dealer, or (b) the third anniversary of the last day of the model year of the motorcycle/sidecar.

DE 17-1. Plaintiff's claim for breach of express warranty fails for two reasons. First, he did not allege that Harley-Davidson failed to repair a covered defect that manifested during the warranty period.[1] Second, assuming Harley-Davidson did breach the warranty within the warranty period, the latest it could have done so was 2013, two years after Plaintiff purchased his motorcycle in 2011. This means that the five-year statute of limitations ran in 2018, and this claim is time-barred.

---

1 The Court will not consider Plaintiff's arguments that the limitations in the warranty were unconscionable or failed in their essential purpose when Plaintiff has neither pled what those limitations were nor attached the warranty as an exhibit, and has objected to Harley-Davidson doing so. DE 31, at 8–14.

### c. Breach of Implied Warranty

Plaintiff alleges that Harley-Davidson breached the implied warranty of merchantability by selling Class Motorcycles because they were not fit for their ordinary purpose and not merchantable. However, the warranty expressly and conspicuously limited the duration of implied warranties to the term of the express warranty: "ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR PARTICULAR PURPOSE IS LIMITED TO THE DURATION OF THIS WARRANTY." DE 17-1. This type of limitation is permitted under the Magnuson-Moss Warranty Act and under Florida law. 15 U.S.C. § 2308(b); Fla. Stat. § 672.316(2). Accordingly, this claim similarly fails because Plaintiff does not allege that a defect manifested during the warranty period.

### d. Magnuson-Moss Warranty Act

A Magnuson-Moss cause of action depends on the existence of a valid warranty claim under state law. *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1304 (S.D. Fla. 2017) (citing *Bailey v. Monaco Coach Corp.*, 168 Fed. App'x 893, 894 n.1 (11th Cir. 2006)). Because both the express and implied warranty claims have been dismissed, the Magnuson-Moss claim must also be dismissed.

### e. Unjust Enrichment

Plaintiff pleads in the alternative that Plaintiff conferred a benefit on Harley-Davidson by purchasing the Class Motorcycles, that Harley-Davidson knowingly accepted the benefit, and that it would be inequitable for Harley-Davidson to retain the benefit because of Harley-Davidson's failure to remedy the alleged defect. The statute of limitations for claims of unjust enrichment is four years, and the delayed-discovery doctrine does not apply. *Potiker*, 2010 WL

2949943, at *1, *3.  The statute begins to run upon the conferral of the benefit.  *See id.* at *2.  Here, the statute began to run with Plaintiff's purchase of the motorcycle in 2011.  Accordingly, this claim became time-barred in 2015.

### f. Declaratory Judgment

Finally, Plaintiff seeks a declaratory judgment under 28 U.S.C. § 2201 that the Class motorcycles are defective.  "Declaratory relief is a procedural device which depends on an underlying substantive cause of action and cannot stand on its own."  *Eveillard v. Nationstar Mortg. LLC*, No. 14-cv-61786, 2015 WL 127893, at *9 (S.D. Fla. Jan. 8, 2015).  Because the other claims have been dismissed, so too is the claim for declaratory relief.

### g. Class Standing

Because all claims have been dismissed, the Court need not consider Plaintiff's standing to assert claims on behalf of purchasers of other motorcycles.

### IV.   CONCLUSION

Therefore, it is **ORDERED AND ADJUDGED**:

1. Plaintiff's First Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.
2. The deadline for filing an amended complaint is October 25, 2019.  In light of the deadline to amend pleadings having expired on September 3, 2019, DE 29, the amended complaint may not raise new claims.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 18th day of October, 2019.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record